UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BILLY J. SMITH-SCRUGGS,       )    Case No. CV 09-4443-OP
                              )
                Plaintiff,    )
        v.                    )    MEMORANDUM OPINION; ORDER
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
                Defendant.    )
_____)

The Court[1] now rules as follows with respect to the disputed
issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /
/ / /

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[2]  As the Court advised the parties in its Case Management Order, the
decision in this case is made on the basis of the pleadings, the Administrative
Record, and the Joint Stipulation filed by the parties.  In accordance with Rule
12(c) of the Federal Rules of Civil Procedure, the Court has determined which
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1

# I.

2

## DISPUTED ISSUES

3      As reflected in the Joint Stipulation, the disputed issues which Plaintiff

4  raises as grounds for reversal and/or remand are as follows:

5      1)  Whether the Administrative Law Judge's ("ALJ") decision conforms to

6  Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), as directed by the Appeals

7  Council;

8      2)  Whether the ALJ properly considered the medical evidence, the

9  opinions of record, and the Vocational Expert's ("VE") testimony;[3] and

10      3)  Whether the ALJ properly considered Plaintiff's testimony.

11  (JS at 6.)

12

# II.

13

## STANDARD OF REVIEW

14      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

15  to determine whether the Commissioner's findings are supported by substantial

16  evidence and whether the proper legal standards were applied.  DeLorme v.

17  Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

18  than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

19  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

20  Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

21  evidence is "such relevant evidence as a reasonable mind might accept as adequate

22  to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The

23  Court must review the record as a whole and consider adverse as well as

24  supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

25  Where evidence is susceptible of more than one rational interpretation, the

26  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,

27  _____

28      [3]  As these first two issues are closely related, the Court will consider them
together.

2

1  1452 (9th Cir. 1984).

2                                   **III.**

3                              **DISCUSSION**

4  A.    **Whether the Decision Conforms to Chavez and Whether the ALJ**

5        **Properly Considered the Evidence of Record, Including the VE**

6        **Testimony.**

7        1.    **The Chavez Presumption.**

8              The principles of res judicata apply to administrative decisions.  However,

9  the doctrine is not as rigidly applied to administrative proceedings as it is to

10  judicial proceedings.  Chavez, 844 F.2d at 693; see also Gregory v. Bowen, 844

11  F.2d 664, 666 (9th Cir. 1988).  Social Security Acquiescence Ruling ("SSR")

12  97-4(9), adopting Chavez, applies to cases involving a subsequent disability claim

13  with an unadjudicated period arising under the same title of the Social Security

14  Act as a prior claim on which there has been a final administrative decision that

15  the claimant is not disabled.  SSR 97-4(9), 1997 WL 742758.  A previous final

16  determination of nondisability creates a presumption of continuing nondisability

17  with respect to any subsequent unadjudicated period of alleged disability.  Lester

18  v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); see also Miller v. Heckler, 770 F.2d

19  845, 848 (9th Cir. 1985); Lyle v. Sec'y of Health and Human Servs., 700 F.2d 566,

20  568-69 (9th Cir. 1983).  However, the presumption may be overcome by a

21  showing of "changed circumstances," such as new and material changes to the

22  claimant's residual functional capacity ("RFC"), age, education, or work

23  experience.  Lester, 81 F.3d at 827-28; see also Chavez, 844 F.2d at 693; Taylor v.

24  Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Lyle, 700 F.2d at 568 n.2.

25              In order to show "changed circumstances," the evidence must establish that

26  the claimant suffers from an impairment that indicates a greater disability.

27  Chavez, 844 F.2d at 693.  Changed circumstances include a change in age

28  category, an increase in the severity of the claimant's impairment(s), the alleged

                                           3

1 existence of an impairment not previously considered, or a change in the criteria
2 for determining disability.  SSR 97-4(9), 1997 WL 742758, at *3.  Accordingly,
3 res judicata does not apply when the claimant raises an issue not considered in the
4 previous decision, such as the existence of a new impairment, or demonstrates an
5 increase in the severity of an impairment, either one of which adversely affects his
6 RFC.  Lester, 81 F.3d at 827 ("[n]ew or more severe existing impairments that do
7 not adversely affect the claimant's RFC, do not constitute a greater disability.");
8 see also SSR 97-4(9), 1997 WL 742758, at *2 ("where the final decision by the
9 ALJ on the prior claim, which found the claimant not disabled, contained findings
10 of the claimant's residual functional capacity, education, and work experience,
11 SSA may not make different findings in adjudicating the subsequent disability
12 claim unless there is new and material evidence relating to the claimant's residual
13 functional capacity, education or work experience").

14       Following the Ninth Circuit's ruling in Chavez, the Social Security
15 Administration ("SSA") adopted SSR 97-4(9) to explain how the SSA will apply
16 Chavez within the Ninth Circuit.  The ruling applies "only to cases involving a
17 subsequent disability claim with an unadjudicated period arising under the same
18 title of the Act as a prior claim on which there has been a final decision by an ALJ
19 or the Appeals Council that the claimant is not disabled."  SSR 97-4(9), 1997 WL
20 742758, at *3.  The ruling directed adjudicators to follow a two-step inquiry.  Id.
21 First, adjudicators must apply a presumption of continuing non-disability.  A
22 "claimant may rebut this presumption by showing a 'changed circumstance'
23 affecting the issue of disability with respect to the unadjudicated period."  Id.
24 Second, if the claimant rebuts the presumption, adjudicators must give effect to
25 certain findings "contained in the final decision by an ALJ or the Appeals Council
26 on the prior claim, when adjudicating the subsequent claim," including the
27 findings of a claimant's RFC, education, or work experience.  Id.  "Adjudicators
28 must adopt such a finding from the final decision on the prior claim in determining

1   whether the claimant is disabled with respect to the unadjudicated period unless
2   there is new and material evidence relating to such a finding or there has been a
3   change in the law, regulations or rulings affecting the finding or the method for
4   arriving at the finding." Id.
5       **2.    The Decisions.**
6           **a.    2001 Decision.**
7       On July 30, 1999, Plaintiff filed a prior claim for benefits.  On June 29,
8   2001, the ALJ issued a decision ("2001 Decision"), finding that Plaintiff suffered
9   from a combination of musculoskeletal (Kienbock's disease affecting his right
10  wrist) and pulmonary impairments that were severe.  (AR at 48.)  The ALJ found
11  an RFC to perform the demands of light exertional work, lifting and carrying
12  twenty pounds occasionally, ten pounds frequently; standing and walking up to six
13  hours in an eight-hour day; sitting for six hours in an eight-hour day; no frequent,
14  continuous, or repetitive movement or use of the dominant right hand, wrist, or
15  fingers; and no significant exposure to heavy concentrations of air pollutants.  (Id.
16  at 52.)  On June 29, 2001, in a final decision, the ALJ found Plaintiff could
17  perform his past relevant work as a security guard and was not disabled.  (Id.)
18  This is the operative final decision for purposes of the Chavez analysis.
19          **b.    2007 Decision.**
20      In 2004, Plaintiff again applied for benefits, and on October 25, 2006, a
21  hearing was held on the merits.  (Id. at 303-18.)  On February 6, 2007, the ALJ
22  issued a decision ("2007 Decision"), citing to Chavez, finding that Plaintiff
23  suffered from severe impairments consisting of musculoskeletal impairments,
24  possible pulmonary impairment, and, as of January 11, 2005, cervical spine
25  stenosis.  (Id. at 19.)  The ALJ found Plaintiff had the RFC to perform "a generous
26  range" of light exertional work, lifting and carrying twenty pounds occasionally,
27  ten pounds frequently; standing and walking or sitting about six hours in an eight-
28  hour workday; unlimited pushing and/or pulling except as limited by the light

weight lifting and carrying limitation; could frequently climb, balance, stoop, kneel, crouch, or crawl; was limited to frequent reaching in all directions, including handling (gross manipulation), fingering (fine manipulation), or feeling with the upper right extremity; and should avoid concentrated exposure to fumes, odors, dusts, gases or poor ventilation. (Id. at 20.)

The ALJ found Plaintiff could perform his past relevant work as a railroad car inspector and was not disabled. (Id. at 23.) The ALJ noted that Plaintiff held the position of railroad car inspector from 1989 to 1995,[4] and the position of security guard between 1985 and 1989. At the time of the 2001 Decision, therefore, he stated that the security guard position was properly considered "past relevant work." (Id.) At the time of the 2007 Decision, however, that job was more than fifteen years in the past, and it was the railroad car inspector position that qualified as "past relevant work."[5] (Id.)

### c.   **Stipulated Remand and Appeals Council Order.**

After the Appeals Council denied Plaintiff's request for review of the 2007 Decision, he filed a civil action in this Court, entitled Smith-Scruggs v. Astrue, Docket No. CV 07-4496-OP. The parties stipulated to a remand of that action. (Case No. CV 07-4496-OP, Dkt. No. 17.)

In accordance with the Court's order on remand, on April 28, 2008, the Appeals Council remanded the case to the ALJ. (AR at 344-48.) In its order of remand, the Appeals Council noted that the ALJ had found that Plaintiff had not provided "evidence of changed circumstances to suggest a more restricted residual functional capacity assessment than in the prior adverse Administrative Law Judge decision of June 29, 2001." (Id. at 347 (citing id. at 17).)

---

[4] Plaintiff alternatively reported that he had performed this work from 1990 through 1997. (AR at 328.)

[5] Both positions as generally performed constitute light work under the Dictionary of Occupational Titles ("DOT"). (AR at 23.)

1   The Appeals Council directed the ALJ to (1) obtain additional evidence
2   concerning Plaintiff's cervical spinal stenosis and possible pulmonary impairment,
3   including, if warranted and available, consultative orthopedic and internal
4   medicine examinations and medical source statements about what Plaintiff can
5   still do despite his impairments; (2) give further consideration to Plaintiff's RFC,
6   and provide appropriate rationale with specific references to evidence of record in
7   support of the assessed limitations; (3) consider <u>Chavez</u> in assessing Plaintiff's
8   RFC and past relevant work, and "explain the changed circumstances from the
9   2001 decision to overcome the <u>Chavez</u> presumption"; and (4) obtain evidence
10  from a vocational expert to clarify the assessed limitations on the claimant's
11  occupational base.[6] (<u>Id.</u>)

12          **d.    2009 Decision.**

13          On February 25, 2009, the ALJ conducted a hearing on remand. (<u>Id.</u> at 354-
14  80.) On May 14, 2009, the ALJ issued his decision ("2009 Decision"). (<u>Id.</u> at
15  319-30.) He specifically incorporated the 2007 Decision "as the decision on
16  remand as supplemented herein." (<u>Id.</u> at 323.) The ALJ now found the Plaintiff
17  had the severe impairments of cervical strain and lumbosacral strain and retained
18  the RFC to perform the demands of medium exertion work at all relevant times.
19  (<u>Id.</u> at 325.) He again concluded that Plaintiff could perform his past relevant
20  work as a railroad car inspector, as generally performed, which the Department of
21  Occupational Titles describes as semi-skilled and light exertional.[7] (<u>Id.</u> at 328-29.)

22          The ALJ also made an alternative step five determination of Plaintiff's
23  ability to do other work based on vocational expert testimony. The VE was asked
24  to assume "an individual with a light residual functional capacity assessment as

25  _____

26          [6] <u>See also</u> Discussion, <u>infra</u>, Part III.B (discussing the ALJ's credibility
27  finding).

28          [7] The ALJ acknowledged that as Plaintiff described performing his prior
    work, the work was heavy. (AR at 328.)

1   described by Dr. Taylor-Holmes, a State agency review physician." (Id. at 329
2   (citing id. at 480-85).)  The VE testified that given the "manipulative limitations
3   and the requirement to use a cane for long distances or uneven terrain," limitations
4   presented by Dr. Taylor-Holmes' assessment, Plaintiff could not perform his work
5   as railroad car inspector even as generally performed, but still could perform the
6   requirements of thousands of light exertional jobs such as cleaner, housekeeper,
7   packager, charge account clerk, ticket worker, or surveillance monitor.  (Id. at
8   373.)  On cross-examination, Plaintiff's counsel asked the VE to include a
9   limitation of occasional "looking down," and then occasional use of the right hand
10  (without the "looking down" limitation).  (Id. at 377.)  The VE testified that with
11  the limitation of looking down, only the work of charge account clerk or ticket
12  worker remained, and there would be "very few" such positions available.  (Id.)
13  With the limitation of occasional use of the right hand (without the looking down
14  limitation), Plaintiff could not perform work as a cleaner, housekeeper, hand
15  packager, charge account clerk, ticket worker, or surveillance monitor.  (Id.)  The
16  ALJ found the limitations suggested by Plaintiff's counsel were unsupported by
17  the examinations and findings of record.  (Id. at 330.)  He determined Plaintiff was
18  not disabled.  This civil action followed.

19      **3.    Chavez Presumption.**

20      Plaintiff contends that the "important findings" in the 2001 Decision relate
21  to the "presence of Keinbock's [sic] Disease and the resulting limitation to less
22  than frequent use of the right dominant hand."  (JS at 6.)  He claims that the ALJ's
23  failure to mention the Kienbock's disease in the 2009 Decision, or to mention the
24  prior limitation (from the 2001 Decision) in Plaintiff's ability to manipulate with
25  the dominant right hand, violates Chavez.  (Id. at 7.)

26      Preliminarily, the ALJ's most recent re-review was circumscribed by the
27  Appeals Council remand order to consideration of Plaintiff's cervical spine
28  stenosis and COPD.  In the 2009 Decision, the ALJ specifically incorporated the

8

1 | 2007 Decision which he considered to be "the decision on remand as
2 | supplemented herein." (AR at 323.)
3 |       The Appeals Council order specifically stated:
4 |       The Administrative Law Judge noted that the security guard job was
5 |       performed more than 15 years prior to this current adjudication.
6 |       Consistent with . . . Chavez v. Bowen . . . and Acquiescence Ruling 97-
7 |       4, the Administrative Law Judge must explain the changed
8 |       circumstances to overcome the Chavez presumption. . . . [¶] Upon
9 |       remand the Administrative Law Judge will: . . . [c]onsider Chavez v.
10 |       Bowen . . . in assessing the claimant's . . . past relevant work.
11 | (Id. at 347.)
12 |       It is clear from the Appeals Council remand order, that its order to consider
13 | Chavez was at least in part a reaction to the change found by the ALJ in Plaintiff's
14 | past relevant work. Thus, pursuant to Chavez, once Plaintiff alleged the
15 | acknowledged "changed circumstance" of cervical stenosis, the ALJ was required
16 | to adopt the prior 2001 Decision finding regarding work experience unless there
17 | was new and material evidence relating to that finding. In his 2009 Decision, the
18 | ALJ properly considered Plaintiff's application and work history report, as well as
19 | earnings records, to find that his work as a railroad car inspector was the most
20 | recent relevant work for purposes of this later decision. (Id. at 23, 328.) There
21 | was no Chavez error in making this change to the prior work experience finding.
22 |       The Appeals Council order also implied that the ALJ should consider the
23 | additional evidence obtained relating to Plaintiff's cervical stenosis and possible
24 | pulmonary impairments to determine whether that evidence constituted "new and
25 | material evidence" relating to the 2001 Decision's RFC finding, which must
26 | otherwise be adopted:
27 |       Upon remand the Administrative Law Judge will: . . . [1] Obtain
28 |       additional evidence concerning the claimant's cervical spinal stenosis

and possibly pulmonary impairment . . .[; 2] Give further consideration
to the claimant's maximum residual functional capacity . . . [; and 3
c]onsider <u>Chavez v. Bowen</u> . . . in assessing the claimant's residual
functional capacity . . . .

(<u>Id.</u> at 347.)

Because Plaintiff rebutted the <u>Chavez</u> presumption by showing the
"changed circumstance" of a new impairment of spinal stenosis, the prior RFC of
light work with lifting and carrying twenty pounds occasionally, ten pounds
frequently; standing and walking up to six hours in an eight-hour day; sitting for
six hours in an eight-hour day; no frequent, continuous, or repetitive movement or
use of the dominant right hand, wrist, or fingers; and no significant exposure to
heavy concentrations of air pollutants, must be adopted unless there is new and
material evidence relating to those findings such that a more restricted RFC is
warranted.  SSR 97-4(9), 1997 WL 742758.

### 4.   **Medical Records.**

The ALJ reviewed all of the new and material evidence and found no reason
to reject the RFC assessment done by Dr. Sophon, the consultative examiner and
orthopedic specialist, conducted on September 28, 2007. (AR at 327.)  Dr.
Sophon reviewed medical imaging of the cervical spine, reviewed Plaintiff's
history of surgery for Kienbock's disease, reviewed his smoking and social
history, took his physical measurements, and administered a variety of tests, the
results of which she found to be generally within normal limits. (<u>Id.</u> (citing 444-
48).)  The exception was an apparent reduced grip strength on both the left and
right hands. (<u>Id.</u> at 445.)  She diagnosed cervical sprain and lumbosacral strain,
and noted restriction of motion of the cervical and lumbar spine, and a normal
neurological examination. (<u>Id.</u> at 448.)  She opined that Plaintiff was able to sit,
stand and/or walk six hours in an eight-hour workday with no other limitations.
(<u>Id.</u> at 327.)  In her opinion, Dr. Sophon acknowledged Plaintiff's surgery for

10

1   Kienbock's disease, yet made no mention of the grip strength findings, and
2   nevertheless concluded that Plaintiff could lift up to fifty pounds occasionally and
3   twenty-five pounds frequently. (Id. at 448.) Dr. Sophon also never mentioned
4   Plaintiff's use of or need for a cane.

5          An evaluation conducted on October 14, 2008, by Dr. Eriks, a Board
6   certified internist, also found Plaintiff had a reduced grip strength, but noted
7   "questionable cooperation." (Id. at 542.) Dr. Eriks nevertheless concluded that
8   Plaintiff had a normal grip, normal gross and fine motor in both hands and all
9   fingers, and a full range of motion in both wrists. (Id. at 543-44.) Although
10  Plaintiff criticizes Dr. Eriks for failing to consider the Kienbock's disease (JS at
11  9), Dr. Eriks noted that Plaintiff previously had surgery on his right wrist and
12  indicated that the testing she conducted found nothing out of the normal range.
13  (AR at 542.) Dr. Eriks also noted that Plaintiff uses a cane for ambulation "and
14  this is likely necessary." (Id. at 544.)

15         As acknowledged by Defendant, however, the conclusions on the last page
16  of Dr. Eriks' report clearly reference another person (see id. at 545 (inserting the
17  name and social security number of a different individual). After this insert, the
18  record states: "IMPRESSION:  Claimant has an obese body habitus.  He
19  complains of no pain with the exception of mild occasional pain in his left heel,
20  which could possibly be plantar fasciitis. . . ." (Id.)  Then, in the immediately
21  following "MEDICAL SOURCE STATEMENT," Dr. Eriks goes on to state that
22  pursuant to her examination, the "claimant has no restrictions in the areas of
23  lifting, carrying, standing, walking, or sitting.  No special limitations in standing,
24  walking, or sitting.  No postural, manipulative, visual, communicative or
25  environmental limitations." (Id.)  This conclusion is completely contradictory to
26  Dr. Eriks' prior acknowledgment that Plaintiff uses a cane for ambulation and that
27  the cane is necessary. (See id. at 544.)  Thus, it is also likely that Dr. Eriks'
28  Medical Source Statement conclusions do not actually refer to Plaintiff.

11

1    In adopting Dr. Sophon's opinion, however, the ALJ specifically noted that
2   Dr. Sophon's opinion was "more restrictive tha[n] Dr. Eriks['] opinion who found
3   . . . that the claimant had <u>no</u> restrictions in the areas of lifting, carrying, standing,
4   walking, or sitting, and no special limitation in standing, walking, or sitting." (<u>Id.</u>
5   at 327 (citing <u>id.</u> at 545).)  It appears, therefore, that in deciding to adopt Dr.
6   Sophon's "less restrictive" opinion, the ALJ relied, at least in part, on the wrongly
7   attributed conclusions of Dr. Eriks as corroboration for his RFC finding of
8   unrestricted medium work.[8]
9        The fact is, therefore, that Dr. Sophon is the only physician who found
10   Plaintiff capable of the full unrestricted range of medium work.[9]  In July 2004, Dr.
11   Spellman, who conducted a record review pursuant to <u>Chavez</u>, found Plaintiff's
12   RFC to be consistent with the June 29, 2001, RFC.  (<u>Id.</u> at 142.)  He found that
13   Plaintiff could lift twenty pounds occasionally, ten pounds frequently, and was
14   limited to less than constant reaching, handling, fingering, and feeling with his
15   right hand.  (<u>Id.</u> at 144-46.)  On June 3, 2005, Dr. Broasky reviewed all of the
16   evidence in the file and affirmed Dr. Spellman's assessment as written.  (<u>Id.</u> at
17   150.)  On October 11, 2007, State agency reviewing physician, Dr. Naiman,
18   evaluated Plaintiff and the record and found that he could lift twenty pounds
19   occasionally, ten pounds frequently, and was limited to frequent reaching,
20   handling, fingering, and feeling.  (<u>Id.</u> at 468.)  He concluded:
21        Adjudicated under Chavez Ruling Case Processing.  There does

22   _____

23    [8]  Medium work requires lifting up to fifty pounds occasionally, twenty
24   pounds frequently, and an ability to stand and/or walk for virtually the entire day.
     20 C.F.R. §§ 404.1567, 416.967; <u>Hajek v. Shalala</u>, 30 F.3d 89, 92 (8th Cir. 1994)
25   (medium work as elaborated in SSR 83-10 requires an ability to do "prolonged
26   walking," equivalent to about six hours of an eight-hour workday in order to meet
     the requirements of frequent (between one-third and two-thirds of an eight-hour
27   workday) lifting or carrying of objects weighing up to twenty-five pounds).
28
      [9]  <u>But see</u> discussion regarding Dr. Naiman's findings.

not appear to be major overall significant changes as compared to the
ALJ description of symptoms and findings. . . . This RFC does not
represent either the [Medical Source Statement of Dr. Sophon] or my
professional judgment and independent assessment but rather the RFC
(Finding 5) as of the ALJ decision in file [the 2007 Decision].[10]

(Id. at 467.)  In his accompanying report, however, despite the limitations he had
noted on lifting (id. at 464), his acknowledgment that Plaintiff was a candidate for
cervical surgery (id. at 461 (citing April 4, 2006, neurosurgery consultation
report)), the fact that Plaintiff used a cane for ambulation and with prolonged
walking his legs wobble and weaken (id), and despite Dr. Sophon's own findings
of decreased bilateral grips in both hands, and decreased range of motion in the
cervical and lumbar spines (id.), Dr. Naiman inexplicably concluded that there
were no unresolved inconsistencies in the record and "[b]ased on the above, with
considerable weight given to the CE physician's [Dr. Sophon's] assessment, it
appears as though a limitation to medium level activities would not be
inappropriate."  (Id. at 462.)

On December 11, 2007, State agency reviewing physician, Dr. Taylor-
Holmes, specifically found Dr. Sophon's RFC for medium work "inappropriate,"
stating that Plaintiff "should avoid moderate (50lb) lifting due to 4/5 motor in
[upper extremities] and prophylactic protection of cervical cord prior to

---

[10]  That RFC was for "a generous range of light work, lifting and/or carrying
twenty pounds occasionally, 10 pounds frequently; standing and/or walking, or
sitting about six hours in an eight-hour work day[,] with unlimited pushing and/or
pulling, other than as shown for lifting and/or carrying.  The claimant may
frequently climb, balance, stoop, kneel, crouch or crawl.  With his upper right
extremity he is limited to frequent reaching in all directions, including overhead,
handling (gross manipulation), fingering (fine maniipulation), or feeling.  The
claimant should avoid concentrate[d] exposure to fumes, odors, dusts, gases, or
poor ventilation."  (AR at 20.)

anticipated fusion." (Id. at 485.)  She noted that Plaintiff needed a cane for
uneven terrain and long distances. (Id. at 481.)  She agreed with the ALJ's 2007
Decision finding a light RFC, with the additional postural precautions of only
occasional flexion or extension of the neck, occasional over the shoulder level
lift/carry, and frequent at or below shoulder level lift/carry.  (Id.)

Treating physician records also show continuing wrist and neck/back pain
and treatment.  Plaintiff was prescribed Tylenol with codeine for wrist pain on
April 21, 2004. (Id. at 513.)  At that time, he complained of right arm pain, was
unable to extend his arm up, had mild edema in the elbow, and generally
complained of right wrist pain status post surgery. (Id.)  Plaintiff was hospitalized
from January 11, 2005, through January 19, 2005, complaining initially of
numbness to his lower extremities and fingertips. (See id. at 192.)  On discharge,
the orthopedist, Dr. Spitalieri, diagnosed "acute stenosis" in the cervical region
and recommended surgery; Plaintiff wished to proceed. (Id. at 217.)  Moreover,
the "option of no treatment was discussed and discard[ed as] not practical in light
of the patient's condition." (Id.)  On March 20, 2006, Dr. Wong wrote a letter
noting that he had been treating Plaintiff for chronic neck and low back pain and
that it was recommended he undergo surgery for the cervical spondylitic
myelopathy. (Id. at 35.)  On April 4, 2006, Dr. Hoshek and an unnamed doctor
wrote a consultation note to Dr. Wong, stating that Plaintiff needed a cane to
ambulate, and diagnosing cervical stenosis and spondylitic myelopathy. (Id. at
443.)  The note further indicated that Plaintiff's gait was weak even with the cane
and his tandem gate was abnormal with some swaying.[11] (Id.)  In August 2007,
Nurse Practitioner Valcore, summarized Plaintiff's history, physical exam,
relevant investigations, and "Dr. Warner's overall impression and plan." (Id. at
432-33.)  She noted that the physical examination showed slightly decreased

---

[11] The second page of this letter appears to be missing.

14

1    sensation to pinprick in the upper extremities, and that Dr. Warner's impression

2    was of spinal stenosis with myelopathy and paresthesias (as well as diabetes,

3    hypertension, and nicotine abuse.). (Id. at 432.)  That record, like many others,

4    reflected that Plaintiff is a candidate for cervical surgery. (Id. at 433; see also id.

5    at 442.)

6         In his 2007 Decision, the ALJ specifically found that Plaintiff had a severe

7    musculoskeletal impairment (i.e., the right wrist problem) and limited him to

8    frequent reaching, handling, fingering, or feeling. (Id. at 20.)  His RFC

9    assessment in the 2009 Decision, completely disregarded this prior finding (which

10   had also been a primary issue in the 2001 Decision), and provided no explanation

11   of the change (other than the discussed unwarranted reliance on Dr. Sophon's and

12   Dr. Eriks' opinions).

13        **5.    Analysis.**

14        After reviewing all of the above, the Court agrees that the presumption of

15   continuing nondisability was rebutted by the new diagnosis of cervical stenosis.

16   The Court also finds, however, that new and material evidence was admitted,

17   sufficient to further restrict the 2001 Decision RFC finding and support a finding

18   of disability.

19        Substantial evidence does not support the ALJ's adoption of the unrestricted

20   medium work level RFC suggested by Dr. Sophon.  While normally a consulting

21   examining physician's report itself may be substantial evidence (see Andrews v.

22   Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)), the Court notes that the report is not

23   supported by any other record evidence, including evidence from treating

24   physicians Drs. Spitalieri, Wong, Hoshek,[12] and Warner and, in fact, is flatly

25

26        [12] In fact, in the 2007 Decision, the ALJ specifically relied on Dr. Hoshek's

27   diagnosis of cervical spondylitic myelopathy and cervical stenosis in determining

28   the existence of these impairments.  (AR at 19, 21-22.)  The ALJ concluded that

(continued...)

15

1  rejected by one other state agency reviewer. The ALJ did not state any reasons for

2  rejecting the opinions of these treating physicians.[13] See Thomas v. Barnhart, 278

3  F.3d 947, 957 (9th Cir. 2002) (if the treating physician's opinion is controverted, it

4  may be rejected only if the ALJ makes findings setting forth specific and

5  legitimate reasons that are based on the substantial evidence of record);

6  Magallanes v. Bowen, 881 F.2d 643, 751 (9th Cir. 1989); Winans v. Bowen, 853

7  F.2d 643, 647 (9th Cir. 1987). Moreover, to the extent the ALJ relied on Dr.

8  Eriks' erroneous conclusion as additional evidence supporting the medium

9  exertional work level, that, too, was error.

10       As noted, however, the ALJ, in the alternative, made a step five RFC

11  finding based on the limitations suggested by Dr. Taylor-Holmes. (AR at 330.)

12  The ALJ did not, however, specifically state the limitations for the record.

13  Instead, he asked the VE to review the limitations on pages two through six of Dr.

14  Taylor-Holmes report.[14] (Id. at 372.)

15       The VE noted that the limitations described work "at the light range of work

16  activity," and testified that there were numerous unskilled or entry level jobs that

17  Plaintiff could perform even with those limitations. (Id. at 372-374.) He

18  specifically stated that with the "manipulative limitations and the requirement to

19  use a cane for long distances or uneven terrain," Plaintiff would not be able to

20  _____

21       [12](...continued)

22  Dr. Hoshek's limitations were compatible with the assessed RFC of a "generous
    range of light work," and with the State agency opinions then in the record (i.e.,

23  Dr. Spellman's opinion). (Id. at 22.)

24       [13] The Court agrees with the Commissioner that the ALJ properly rejected

25  the opinions of Dr. Hutton and Dr. Dehgani.

26       [14] The limitation at issue, of occasional flexing/extension of the neck

27  appears on page three of that report, typed in under section C and further
    mentioned again in the Additional Comments section on "Page 8" of the report.

28  (AR at 482, 485).

1   perform his past work even as generally performed. (Id. at 373.) He stated that

2   Plaintiff could perform unskilled or entry level jobs such as housekeeper and hand

3   packager, with over 5,000 such positions available in the region (Id.) He also

4   noted various unskilled clerical positions available in numbers in excess of 2,000

5   in the region, such as charge account clerk, ticket worker, and surveillance

6   monitor, which Plaintiff could perform given the limitations suggested by Dr.

7   Taylor-Holmes. (Id. at 374.)

8           Presumably, when the VE told the ALJ there were significant numbers of

9   jobs available in the region[15] that Plaintiff could perform even with the limitations

10  stated by Dr. Taylor-Holmes, this included the limitation indicated by Dr. Taylor-

11  Holmes of only occasional flexing/extension of the neck.  However, when

12  Plaintiff's counsel then specifically asked the VE whether there would be any

13  reduction in availability of work if "the person can only occasionally look

14  down,"[16] the VE replied that only the jobs of ticket worker and charge account

15  clerk would "not necessarily require" looking down more than occasionally. (Id.

16  at 375.) He stated that he "believe[d] there are jobs that would be performable on

17  an occasional basis primarily at entertaining facilities." (Id. at 376.)  He also

18  admitted that the DOT would actually describe those jobs as requiring frequent

19  looking down but that he believed there were a subset of those jobs where only

20

21          [15] The VE offered no opinion as to the number of jobs outside Southern
22  California. See 42 U.S.C. § 423(d)(2)(A) (1995) ("Work which exists in the
23  national economy" means work which exists in significant numbers either in the
24  region the claimant lives or in several regions of the country).

25          [16] Looking down is the same as flexing of the neck. See, e.g.,
26  Khounesavatdy v. Astrue, 549 F. Supp. 2d 1218, 1228 (E.D. Cal. 2008). See also
    http://www.einspine, defining neck flexion as "[t]he action (and position) of
27  bending the head forward (chin to chest)." Thus, this limitation should have been
28  considered by the VE when the ALJ initially posed the hypothetical. Apparently,
    however, given the VE's varying response, it was not.

                                          17

1 occasional looking down would be required.  (Id.)  When pressed by counsel to
2 provide the remaining number of such jobs, given the approximate total of 2,000
3 in the region, the VE stated, "Well, if we . . . take the DOT at face value [that the
4 positions require more than occasional looking down], then we'd virtually
5 eliminate the total occupational base of those types of jobs."  (Id. at 377.)  Counsel
6 asked: "So there would be very few . . . jobs with that limitation?" and the VE
7 responded, "Yes."  (Id. (emphasis added).)
8         Appellate decisions in this circuit "ha[ve] never clearly established the
9 minimum number of jobs necessary to constitute a 'significant number.'"  Barker
10 v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-1479 (9th Cir. 1989).
11 In Barker, the court found that 2,466 relevant jobs were available in the region and
12 that this number was "significant."  Id.  The court also observed, in dicta, that even
13 1,266 jobs would be "within the parameters of 'significant numbers'" found in
14 cases from other circuits and district courts within the Ninth Circuit.  Id. at 1479.
15 Although cases cited in Barker suggest that a few hundred jobs may constitute a
16 "significant" number, those cases do not mandate a particular finding in Plaintiff's
17 case.  In those cases, unlike the present case, the VEs identified unequivocally,
18 and with specificity, the numbers (or range of numbers) of jobs available.  The
19 record in those cases reflects unambiguous evidence of the number of jobs
20 available and provides a clear, meaningful record for review.
21         In this case, by contrast, the VE's testimony does not unequivocally
22 establish that any of the light unskilled jobs he mentioned were available in the
23 local region for someone who could only occasionally flex/extend the neck.  He
24 merely acknowledged that the DOT would "virtually eliminate" all these jobs with
25 the limitation of occasional looking down and that it was his "belief" that "very
26 few" such jobs would remain for someone with that limitation.  He provided no
27 information on which he based this "belief," or as to what he meant by "very few,"
28

1 | and the ALJ did not further inquire.[17]  The Court finds that on its face, "very few"
2 | is not indicative that such positions for someone with Plaintiff's impairments are
3 | available in "significant numbers" in the region.  Accordingly, the Administration
4 | has not met its step five burden of showing that other work exists in significant
5 | numbers that the claimant can do, given his RFC, age, education, and work
6 | experience.  Thus, Plaintiff is disabled.

7 | **B.**    **Whether the ALJ Properly Considered Plaintiff's Testimony.**

8 |     Plaintiff contends the ALJ failed to articulate any legally sufficient reasons
9 | for rejecting Plaintiff's testimony. (JS at 37.)  Because the Court also finds error
10 | in this assessment, further supporting remand for payment of benefits, it will
11 | discuss this issue notwithstanding the above determination.

12 |     In the 2007 Decision, the ALJ specifically determined that Plaintiff's
13 | medically determinable impairments could reasonably be expected to produce
14 | symptoms, but that the statements regarding the intensity, persistence, and limiting
15 | effects were not entirely credible. (AR at 21.)  He cited the fact that the 2001
16 | Decision was unappealed, concluding from this that there was no material change
17 | in Plaintiff's condition until January 11, 2005, when Plaintiff presented at the

---

[17] The ALJ's attempt to discount Plaintiff's counsel's questions by stating he did "not find such cervical spine . . . limitations are applicable," is unavailing. He himself found the Plaintiff had the severe impairment of "cervical strain." (AR at 324.)  He also asked the VE to opine regarding someone with Dr. Taylor-Holmes assessed limitations, which included only occasional flexing/extension of the neck.  There is no evidence that counsel's follow-up question, phrased as "occasional looking down," is any different from that adopted limitation; it appears that the VE did not include that limitation when initially responding to the ALJ's hypothetical.  Moreover, it is abundantly clear that surgical repair has been repeatedly recommended for Plaintiff's cervical spine impairment.

1  hospital with diffuse neurological complaints. (Id. (citing id. at 222).)[18]  To

2  support his credibility finding, the ALJ stated that Plaintiff had not yet undergone

3  recommended surgery and had not "offered a plausible explanation why he has not

4  followed his doctors' advice to have a reparative operation." (Id. at 22.)  He

5  concluded that the pain symptoms "are apparently not severe enough to motivate

6  him to seek treatment or follow his doctor's advice." (Id.)  The Appeals Council

7  soundly rejected that conclusion, recognizing that the surgery had not been

8  performed because Plaintiff's Medi-Cal eligibility had not been determined, and

9  that further credibility assessment would be necessary. (Id. at 347.)

10      The ALJ's current credibility assessment fares no better.  The ALJ merely

11 states in a conclusory fashion that Plaintiff's medically determinable impairments

12 could reasonably be expected to cause some of the alleged symptoms, but that the

13 Plaintiff's statements concerning the intensity, persistence, and limiting effects are

14 not credible to the extent they are inconsistent with the RFC for medium work.

15 (Id. at 326.)  After noting his reliance on Dr. Sophon's and Dr. Erik's opinions, he

16 then stated:

17          In making this decision, I have noted that cervical spine surgery

18      has been mentioned for years, but it has never been performed although

19      there is no documented contraindication for it.  The claimant's current

20      treatment is minimal and conservative, in fact the claimant said that he

21      had not be [sic] to ARMC, his primary source of treatment, since early

22      2008.  Furthermore, the claimant's testimony is about the same as before

23      and establishes no different conclusions.  He again asserted the lifestyle

24

25

26  [18]  The Court notes that Plaintiff was hospitalized from January 11, 2005,
through January 19, 2005. (See AR at 192.)  The neurologist found "acute
27  stenosis" and recommended surgery. (Id. at 217.)  Moreover, the "option of no
treatment was discussed and discard[ed as] not practical in light of the patient's
28  condition." (Id.)

1        of a valetudinarian[19] and is still supported by his girl friend with food

2        stamps and money from general relief.[20]

3   (Id. at 328.)

4        Other than this continued reliance on the fact that Plaintiff had not yet had

5   surgery, the ALJ did not state any new reasons for disbelieving Plaintiff's

6   testimony.  Moreover, this statement again fails to take into account the record

7   evidence that Plaintiff has not had the surgery because he has had issues with

8   Medi-Cal approval.  The additional gratuitous statements regarding Plaintiff's

9   health concerns and living situation add nothing.  The fact that Plaintiff might be

10  excessively concerned about his poor health or need to rely on someone else for

11  support does not necessarily follow that he is not credible.  Thus, the cited reason

12  for discounting Plaintiff's credibility is not supported by the record and the ALJ

13  did not comply with the Appeals Council order to perform a "[f]urther credibility

14  assessment . . . in accordance with Social Security Ruling 96-7p." (Id. at 347.)

15  The ALJ's credibility determination was error.

16  **C.    This Case Should Be Remanded for Payment of Benefits.**

17       The law is well established that the decision whether to remand for further

18  proceedings or simply to award benefits is within the discretion of the Court.  See,

19  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

20  888 F.2d 599, 603 (9th Cir. 1989); Lewin  v. Schweiker, 654 F.2d 631, 635 (9th

21  Cir. 1981).  Remand is warranted where additional administrative proceedings

22  could remedy defects in the decision.  Lewin, 654 F.2d at 635.  Remand for the

23  payment of benefits is appropriate where no useful purpose would be served by

24  _____

25       [19]  Defined by dictionary.com as "a person who is excessively concerned

26  about his or her poor health or ailments."

27       [20]  The Court notes that Plaintiff testified that at the time of the October

28  2006 hearing, he was homeless.  (AR at 357-58.)  At the more recent hearing, he
     reported that he was living with his girlfriend and his son.  (Id.)

21

1    further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir.

2    1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d

3    1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the

4    receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

5          The Ninth Circuit also has held that "the district court should credit

6    evidence that was rejected during the administrative process and remand for an

7    immediate award of benefits if: (1) the ALJ failed to provide legally sufficient

8    reasons for rejecting the evidence; (2) there are no outstanding issues that must be

9    resolved before a determination of disability can be made; and (3) it is clear from

10   the record that the ALJ would be required to find the claimant disabled were such

11   evidence credited." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>see</u>

12   <u>also</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000);[21] <u>Lester</u>, 81 F.3d at

13   834; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996); <u>Pitzer v. Sullivan</u>, 908

14   F.2d 502, 506 (9th Cir. 1990); <u>Hammock v. Bowen</u>, 879 F.2d 498, 502 (9th Cir.

15   1989); <u>Varney v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1396, 1988-1401 (9th

16   Cir. 1988); <u>but see</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003) (the

17   "crediting as true" doctrine is not mandatory in the Ninth Circuit; remanding for

18   reconsideration of the claimant's credibility where the record contained

19   insufficient findings as to whether the claimant's testimony should be credited as

20   true).

21         Under the foregoing authorities, when this test is met, the Court will take

22   the improperly discredited testimony as true and not remand solely to allow the

23   ALJ another opportunity to make specific findings regarding that testimony. This

24   rule applies to improperly discredited opinions of treating or examining

25   physicians.

26   _____

27         [21]  In <u>Harman</u>, the Ninth Circuit noted that this three-part test "really

28   constitutes a two part inquiry, wherein the third prong is a subcategory of the

second." <u>Harman</u>, 211 F.3d at 1178 n.7.

Here, the Court has found that the ALJ improperly discredited the opinions of Plaintiff's treating and examining physicians. It is clear from the record that the ALJ would be required to find Plaintiff disabled if the opinions of Drs. Taylor-Holmes, Spitalieri, Wong, Hoshek, Spellman, Broasky, Warner, were fully credited. At Plaintiff's hearing before the ALJ, the VE testified that for an individual with the limitations set forth by Dr. Taylor-Holmes, including a limitation to only occasional flexing of the neck, "very few" light unskilled positions were available in the region. As stated above, this does not satisfy the burden of showing that other work exists in significant numbers that the Plaintiff can do.

Based on the foregoing, the Court finds that this is a case where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, and where remand would only unnecessarily delay the receipt of benefits.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for the payment of benefits.

Dated: January ⁄ , 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge